Filed 10/16/14

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Appellant, | E058563 |
| v. | (Super.Ct.No. RIF75582) |
| JERRY CARL BRIMMER, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County. Becky Dugan, Judge. Reversed.

Paul E. Zellerbach, District Attorney, and Emily R. Hanks, Deputy District Attorney, for Plaintiff and Appellant.

James R. Bostwick, Jr., under appointment by the Court of Appeal, for Defendant and Respondent.

This is an appeal by the People following the trial court's order granting defendant and respondent Jerry Carl Brimmer's petition to recall defendant's sentence under the

1

Three Strikes Reform Act of 2012, added by Proposition 36 (the Act). (Pen. Code, § 1170.126.)[1] On appeal, the People contend that the trial court erred in finding defendant eligible for resentencing under the Act because during the commission of the offense, defendant used and was armed with a firearm. For the reasons explained below, we will reverse the trial court's order.

I

FACTUAL AND PROCEDURAL BACKGROUND[2]

On July 4, 1997, an Independence Day party occurred at the apartment complex in which defendant, his common law wife Claudette Walters, and his infant daughter resided. Both defendant and his wife were drinking. During the course of the party, defendant and Walters got into an argument. Apparently, defendant was angry at Walters for agreeing to let a friend's pit bull live in the apartment without consulting him first, as he was concerned about his daughter's safety. Kutrina Farris, a neighbor, saw defendant and Walters argue in front of the building. Then, defendant took his daughter and left. Subsequently, he returned with a gun and continued his argument with Walters; and while still holding on to the weapon, defendant told his girlfriend, " 'let's get it on.' " Subsequently, Walters' daughter, Dominique, told Farris that defendant pulled a gun on

---

[1] All future statutory references are to the Penal Code unless otherwise stated.

[2] The factual background of the underlying offense is taken from this court's nonpublished opinion in defendant's prior appeal following his current convictions (see *People v. Brimmer* (Aug. 3, 1999, E023004) [nonpubl. opn.]), as well as from the police report, which is attached to the People's opposition to recall defendant's sentence.

her mother. In response, Farris called the police. After summoning the police, Farris saw defendant walk out of his apartment with a shotgun and hide the gun in the nearby rose bushes.

When the police arrived, defendant was belligerent and could not be interviewed due to being severely intoxicated. Defendant was arrested, transported to county jail, and placed in an isolated drunk room of the jail. Police officers recovered an unloaded sawed-off shotgun in the bushes near the apartment.

On May 7, 1998, defendant was convicted of being a felon in possession of a firearm (former § 12021, subd. (a)(1); count 1) and possession of a short-barreled shotgun (former § 12020, subd. (a); count 2). It was also found true that defendant had suffered three prior strike convictions, two for robbery and two for first degree residential burglary. Defendant was subsequently sentenced to 25 years to life in state prison.

On November 6, 2012, the electorate passed Proposition 36, also known as the Act. Among other things, this ballot measure enacted section 1170.126, which permits persons currently serving an indeterminate life term under the "Three Strikes" law to file a petition in the sentencing court seeking to be resentenced to a determinate term as a second striker. (§ 1170.126, subd. (f).) If the trial court determines, in its discretion, that the defendant meets the criteria of section 1170.126, subdivision (e), the court may resentence the defendant. (§ 1170.126, subds. (f), (g).)

Section 1170.126, subdivision (e), provides, as pertinent here, that a defendant is eligible for resentencing if he or she is serving an indeterminate term of life

imprisonment imposed pursuant to paragraph (2) of subdivision (e) of section 667 or subdivision (c) of section 1170.12 "for a conviction of a felony or felonies that are not defined as serious and/or violent felonies by subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7." (§ 1170.126, subd. (e)(1).) The Act makes ineligible for resentencing those persons who "[d]uring the commission of the current offense, the defendant used a firearm, [or] was armed with a firearm . . . ." (§§ 667, subd. (e)(2)(C)(iii); 1170.12, subd. (c)(2)(C)(iii); see § 1170.126, subd. (e).)

On December 13, 2012, defendant filed a petition for resentencing under section 1170.126. The People opposed the petition on the grounds that defendant was statutorily ineligible under the Act. The People argued that defendant was ineligible because he was armed with and used a firearm during the commission of the crime; that the prosecution did not have to plead and prove defendant was armed with and used a firearm; and that defendant posed a risk to public safety.

The trial court heard the petition on April 11, 2013. Following argument from the parties, the trial court granted the petition, finding defendant eligible for resentencing under section 1170.126. The court also found by a preponderance of evidence that defendant did not pose a dangerous risk to public safety. The court explained that defendant "is not likely now, given his age, given the fact that it has been 11-plus years since he has had even an incident of difficulty as far as mutual combat or any other kind of violence in the custodial setting, and even in the custodial setting, to be fair to him, while he's had a number of—he's had three mutual combats, he's had no weapons

4

allegations. He's had no violence. He's had no disrespect to correctional officers. He's had none of the other indicia the Court would show as red flags, other than the mutual combats. [¶] When he's punished, he doesn't argue about it. He takes the punishment. He's verbally warned. There's no indication that he's done anything that is at all not respectful or used a weapon or violated any other rules, but the minor rules we indicated like covering the window."

The court thereafter resentenced defendant to the upper term of three years, doubled to six years due to the prior strike offenses, for felon in possession of a firearm as alleged in count 1; and a stayed six-year sentence on count 2 for possession of a short-barreled shotgun. Defendant was awarded a total of 5,939 days in credits and ordered to report to parole.

The People timely filed an appeal on April 15, 2013.[3]

---

[3] The appealability of the denial of a section 1170.126 petition is currently being considered by the Supreme Court. (See, e.g., *Teal v. Superior Court* (2013) 217 Cal.App.4th 308, review granted July 31, 2013, S211708 [court held it was not appealable]; *People v. Hurtado* (2013) 216 Cal.App.4th 941, review granted July 31, 2013, S212017 [court held it was appealable].) Even if we were to conclude it was a nonappealable order, we could, in the interest of judicial economy and because of uncertainty in the law, treat the People's appeal as a petition for writ of habeas corpus or petition for writ of mandate. (See *People v. Segura* (2008) 44 Cal.4th 921, 928, fn. 4 [treating appeal from nonappealable order as petition for writ of habeas corpus]; *Drum v. Superior Court* (2006) 139 Cal.App.4th 845, 852-853 [Fourth Dist., Div. Two] [treating appeal as petition for writ of mandate due to uncertainty in the law].) In any event, we will review the People's appeal.

II

DISCUSSION

The People argue that defendant was statutorily ineligible under the plain language of the Act, because defendant "used a firearm and was armed with a firearm during the commission of his commitment offense." (§ 667, subd. (e)(2)(C)(iii).) The People explain that the record clearly shows defendant "retrieved a short barreled shotgun," and threatened the victim while holding the gun, stating " 'let's do this' and 'let's get it on.' " Therefore, the People maintain, defendant "used a firearm and was armed with a firearm during the commission of the offense." The People also assert that the provisions of section 1170.126 do not contain a pleading and proof requirement to render defendant ineligible to petition for resentencing.

Defendant responds that he was a person who was qualified to have his sentence recalled, because his commitment convictions for being a felon in possession of a gun and possession of a short-barreled shotgun are not violent or serious felonies as defined in sections 667.5, subdivision (c), and 1192.7, subdivision (c), and the prosecution failed to plead and prove any disqualifying factors under section 667, subdivision (e)(2)(C). Defendant also argues that his convictions for possessing a firearm do not, in and of themselves, constitute a disqualifying factor, because the arming must occur during the commission of a separate felony and the evidence was insufficient to show that he had a firearm available for offensive or defensive use in the furtherance of any felony. Defendant further claims that using a disqualifying factor not pled and proved to the jury

6

would violate his constitutional rights to due process and a jury trial under *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*).

A.      *Principles of Statutory Interpretation*

Statutory interpretation is a question of law.  (*Reno v. Baird* (1998) 18 Cal.4th 640, 660.)  Consequently, appellate courts apply their independent judgment when interpreting a legislative act.  (*California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699.)

"Thus, the first step in statutory construction is to examine the statutory language and give it a plain and commonsense meaning."  (*People v. Verduzco* (2012) 210 Cal.App.4th 1406, 1414.)  In other words, "We must give the statutory provisions at issue a reasonable and common sense interpretation, consistent with the apparent purpose and intention of the Legislature.  If possible, we will give significance to the plain meaning of every word, phrase, and sentence of a statute in pursuance of the legislative purpose, harmonizing the various parts of an enactment by considering each particular clause or section in the context of the statutory framework as a whole.  In this process, we must take into account the context, object, and history of the legislation, as well as public policy and contemporaneous construction in our attempt to arrive at a construction that is practical rather than technical in nature.  [Citations.]"  (*In re Rochelle B.* (1996) 49 Cal.App.4th 1212, 1216; see *People v. Zambia* (2011) 51 Cal.4th 965, 972.)

"If the meaning of the statute remains unclear after examination of both the statute's plain language and its legislative history, then we proceed to the third and final

7

step of the interpretive process.  We apply 'reason, practicality, and common sense to the language at hand.'  [Citation.]  The words of the statute should be interpreted 'to make them workable and reasonable.'  [Citation.]" (*People v. Verduzco*, *supra*, 210 Cal.App.4th at p. 1414.)

B.　　*The Act Generally*

The Act amended sections 667 and 1170.12 and added section 1170.126; it changed the requirements for sentencing some third strike offenders.  "Under the original version of the three strikes law a recidivist with two or more prior strikes who is convicted of any new felony is subject to an indeterminate life sentence.  The Act diluted the three strikes law by reserving the life sentence for cases where the current crime is a serious or violent felony or the prosecution has pled and proved an enumerated disqualifying factor.  In all other cases, the recidivist will be sentenced as a second strike offender.  [Citations.]  The Act also created a postconviction release proceeding whereby a prisoner who is serving an indeterminate life sentence imposed pursuant to the three strikes law for a crime that is not a serious or violent felony and who is not disqualified, may have his or her sentence recalled and be sentenced as a second strike offender unless the court determines that resentencing would pose an unreasonable risk of danger to public safety.  (§ 1170.126.)" (*People v. Yearwood* (2013) 213 Cal.App.4th 161, 167-168 (*Yearwood*).)

"Thus, there are two parts to the Act:  the first part is *prospective* only, reducing the sentence to be imposed in future three strike cases where the third strike is not a

8

serious or violent felony [citations]; the second part is *retrospective*, providing *similar, but not identical*, relief for prisoners already serving third strike sentences in cases where the third strike was not a serious or violent felony (Pen. Code, § 1170.126.)" (*People v. Superior Court* (*Kaulick*) (2013) 215 Cal.App.4th 1279, 1292 (*Kaulick*).) "The main difference between the prospective and the retrospective parts of the Act is that the retrospective part of the Act contains an 'escape valve' from resentencing for prisoners whose release poses a risk of danger." (*Id.* at p. 1293.)

We agree with defendant that his current commitment felony offenses of felon in possession of a firearm and illegal possession of a shotgun are not serious or violent felonies under section 667.5, subdivision (c), or section 1192.7, subdivision (c). However, the inquiry does not end with whether or not the current conviction is a serious or violent felony. As previously noted, an inmate is eligible for such resentencing if none of his or her commitment offenses constitute serious or violent felonies *and none of the enumerated factors* disqualifying a defendant for resentencing under the Act apply. (§ 1170.126, subd. (e).)

Using a firearm or being armed with a firearm during the commission of a current offense is a disqualifying factor listed in section 667, subdivision (e)(2)(C)(iii), and section 1170.12, subdivision (c)(2)(C)(iii).[4] Here, as the parties correctly acknowledge,

---

[4] Section 667, subdivision (e)(2)(C)(iii) provides: "[(e)(2)](C) If a defendant has two or more prior serious and/or violent felony convictions as defined in subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7 that have been pled and proved, and the current offense is not a serious or violent felony as defined in subdivision (d), the defendant shall be sentenced [as a second strike offender] pursuant to paragraph (1) of

*[footnote continued on next page]*

9

only the second resentencing eligibility criterion set forth in section 1170.126, subdivision (e)(2), is at issue in this appeal.[5] Thus, under the plain language of the armed-with-a-firearm exclusion, defendant is ineligible for resentencing relief as a second strike offender if his life sentence was "imposed" because "[d]uring the commission of the current offense, [he] used a firearm, [or] was armed with a firearm." (§§ 667, subd. (e)(2)(C)(iii) & 1170.12, subd. (c)(2)(C)(iii), both cross-referenced in § 1170.126, subd. (e)(2).)

In approving the Act, the voters found and declared that its purpose was to prevent the early release of dangerous criminals and relieve prison overcrowding by allowing low-risk, nonviolent inmates serving life sentences for petty crimes, such as shoplifting

---

*[footnote continued from previous page]*
subdivision (e) unless the prosecution pleads and proves any of the following: [¶] . . . [¶] (iii) *During the commission of the current offense, the defendant used a firearm, [or] was armed with a firearm . . . .*" (Italics added.)

Section 1170.12, subdivision (c)(2)(C)(iii), provides: "[(c)(2)](C) If a defendant has two or more prior serious and/or violent felony convictions as defined in subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7 that have been pled and proved, and the current offense is not a felony described in paragraph (1) of subdivision (b) of this section, the defendant shall be sentenced [as a second strike offender] pursuant to paragraph (1) of subdivision (c) of this section, unless the prosecution pleads and proves any of the following: [¶] . . . [¶] (iii) *During the commission of the current offense, the defendant used a firearm, [or] was armed with a firearm . . . .*" (Italics added.)

[5] The first resentencing eligibility criterion set forth in section 1170.126, subdivision (e)(1), is met because defendant is serving an indeterminate life sentence for crimes that (as noted, *ante* ) are not serious or violent felonies. Neither party raises any issue regarding the third criterion set forth in section 1170.126, subdivision (e)(3), and, thus, we shall not discuss it further.

and simple drug possession, to receive twice the normal sentence instead of a life sentence. (Ballot Pamp., Gen. Elec. (Nov. 6, 2012) text of Prop. 36, § 1, subds. (3), (4) & (5), p. 105 (Pamphlet); see *People v. White* (2014) 223 Cal.App.4th 512, 522 (*White*) (review den. Apr. 30, 2014, S217030 [Fourth Dist., Div. One].)[6] The electorate also mandated that the Act be liberally construed to effectuate the protection of the health, safety, and welfare of the people of California. (Pamphlet, *supra*, text of Prop. 36, § 7, p. 110; see *White*, *supra*, at p. 522.) Accordingly, we liberally construe the provisions of the Act in order to effectuate its foregoing purposes and note that findings in voter ballot pamphlets may be used to illuminate ambiguous or uncertain provisions of an enactment. (See *White*, *supra*, at p. 522; *Yearwood*, *supra*, 213 Cal.App.4th at pp. 170-171.)

C.      "*Used*" *or* "*Armed With a Firearm*"

The Act does not define "used" or "armed with a firearm." However, the Penal Code provides definitions to distinguish between arming and use.[7] Section 1203.06, subdivision (b)(3), defines "armed with a firearm" as "to knowingly carry or have available for use a firearm as a means of offense or defense." Section 1203.06, subdivision (b)(2), currently states "'used a firearm' means to display a firearm in a

---

[6] We take judicial notice of the Official Ballot Pamphlet for the California General Election of November 6, 2012, relating to the Act. (See Evid. Code, §§ 452 & 459.)

[7] In sections 12022 and 12022.5, the Legislature drew a distinction between *armed* with a firearm in the commission of a felony and *using* a firearm in the commission of a felony, and it made firearm *use* subject to more severe penalties. (*People v. Bland* (1995) 10 Cal.4th 991, 996-997 (*Bland*).)

11

menacing manner, to intentionally fire it, to intentionally strike or hit a human being with it, or to use it in any manner that qualifies under Section 12022.5."[8] (See CALCRIM No. 3146 [adopts the statutory definition for "use of a firearm"]; *People v. Wims* (1995) 10 Cal.4th 293, 302 [noting the definition in the standard jury instruction for "use" was adapted from the statutory definition]; *People v. Johnson* (1995) 38 Cal.App.4th 1315, 1319 [declaring the statutory definition of gun use in section 1203.06 applicable to section 12022.5].)

In *People v. King* (1993) 5 Cal.4th 59, our Supreme Court noted: "Use" in firearm enhancement statutes, i.e., sections 12022.5, 12022.53, means, among other things, " ' "to carry out a purpose or action by means of," to "make instrumental to an end or process," and to "apply to advantage." ' " (*King* at p. 71, quoting *In re Culbreth* (1976) 17 Cal.3d 330, 334.)

The lead case construing the language of "armed with a firearm" and addressing the definition of arming for purposes of former section 12022 is *Bland*, *supra*, 10 Cal.4th 991. In *Bland*, our Supreme Court, contrasting *arming* with *use* of a firearm, explained that former section 12022, which imposed an additional prison term for anyone "armed with a firearm in the commission" of a felony, applied where "the defendant has the specified weapon available for use, either offensively or defensively." (*Id*. at p. 997.)

---

[8] Section 12022.5, subdivision (a), provides in pertinent part: "[A]ny person who personally uses a firearm in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for 3, 4, or 10 years, unless use of a firearm is an element of that offense."

The court explained:  "[T]he statutory language 'in the commission of a felony' mean[s] any time during and in furtherance of the felony.  Therefore . . . [a] sentence enhancement for being 'armed' with an assault weapon applies whenever during the commission of the underlying felony the defendant had an assault weapon available for use in the furtherance of that felony.  [Citation.]"  (*Id*. at p. 1001, italics omitted.)  "[B]y specifying that the added penalty applies only if the defendant is armed with a firearm 'in the commission' of the felony offense, section 12022 implicitly requires both that the 'arming' take place *during* the underlying crime and that it have some '*facilitative nexus*' to that offense."  (*Bland*, at p. 1002.)

The Supreme Court has subsequently reiterated *Bland*'s holding that the *arming* under section 12022 must have occurred both during the commission of the underlying crime and have a facilitative nexus to the crime.  (*In re Tameka C*. (2000) 22 Cal.4th 190, 197.)  And, most recently, in *People v. Pitto* (2008) 43 Cal.4th 228, in refusing to overrule *Bland*, the court agreed with the defendant's contention that "*Bland* appears to have adopted a 'facilitative nexus' test and embraced a 'purpose and effect' standard." (*Id*. at p. 239.)  In other words, a defendant is armed if the gun has a facilitative nexus with the underlying offense (i.e., it *serves* some purpose in connection with it); however, this requires only that the defendant is aware during the commission of the offense of the nearby presence of a gun available for use offensively or defensively, the presence of which is not a matter of happenstance.  This does not require any intent to use the gun for this purpose.  (*Pitto*, *supra*, at pp. 239-240.)

13

"The statutory elements of a violation of section 12021, subdivision (a)(1), . . . are that a person, who has previously been convicted of a felony, had in his or her *possession* or under his or her custody or control any firearm." (*People v. Padilla* (2002) 98 Cal.App.4th 127, 138, italics added.) Although the crime of possession of a firearm by a felon may involve the act of personally carrying or being in actual *physical* possession of a firearm, as occurred here, such an act is not an essential element of a violation of section 12021, subdivision (a), because a conviction of this offense may also be based on a defendant's constructive possession of a firearm. (See *People v. Sifuentes* (2011) 195 Cal.App.4th 1410, 1417 (*Sifuentes*); *People v. Mejia* (1999) 72 Cal.App.4th 1269, 1272 [defendant need not physically have the weapon on his person; constructive possession of a firearm "is established by showing a knowing exercise of dominion and control" over it].) "To establish constructive possession, the prosecution must prove a defendant knowingly exercised a right to control the prohibited item, either directly or through another person." (*Sifuentes*, *supra*, at p. 1417.) Hence, while the act of being armed with a firearm—that is, having ready access to a firearm (*Bland*, *supra*, 10 Cal.4th at p. 997)—necessarily requires possession of the firearm, possession of a firearm does not necessarily require that the possessor be armed with it.

As the court in *In re Pritchett* (1994) 26 Cal.App.4th 1754 explained: "Possession was complete without use of the shotgun. In addition to possessing it, he did use it, but using it as a club in no way furthered the crime of possession. [¶] At most, [the defendant] used the shotgun as an instrument of possession, or made 'possessory use' of

14

the shotgun, in the commission of his crime of [felon in] possession. However, if possessory use is a legally cognizable concept, it does not support a use enhancement because possessory use is an element of the crime of possession of a deadly weapon." (*Id*. at p. 1757.)

Accordingly, as noted above, "armed with a firearm" has been statutorily defined and judicially construed to mean having a firearm available for use, either offensively or defensively. (E.g., § 1203.06, subd. (b)(3); *Bland*, *supra*, 10 Cal.4th at p. 997.) "The enacting body is deemed to be aware of existing laws and judicial constructions in effect at the time legislation is enacted" (*People v. Weidert* (1985) 39 Cal.3d 836, 844), "and to have enacted or amended a statute in light thereof" (*People v. Harrison* (1989) 48 Cal.3d 321, 329). "This principle applies to legislation enacted by initiative. [Citation.]" (*Weidert*, *supra*, at p. 844.)

"Where, as here, 'the language of a statute uses terms that have been judicially construed, " 'the presumption is almost irresistible' " that the terms have been used " 'in the precise and technical sense which had been placed upon them by the courts.' " [Citations.] This principle [likewise] applies to legislation adopted through the initiative process. [Citation.]' [Citation.] Accordingly, we conclude the electorate intended 'armed with a firearm,' as that phrase is used in the Act, to mean having a firearm available for offensive or defensive use." (*People v. Blakely* (2014) 225 Cal.App.4th 1042, 1052 (petn. for review denied July 9, 2014, S218914) (*Blakely*), quoting *People v. Weidert*, *supra*, 39 Cal.3d at pp. 845-846.)

15

Here, the record does not contain the accusatory pleading.  It is therefore unknown whether defendant was charged with using or being armed with a firearm during the commission of his current commitment offenses.[9]  However, the record shows that the prosecution's case was based on evidence that defendant was armed with an unloaded shotgun while arguing with or threatening his girlfriend during his possession of the shotgun.  In other words, the prosecution's case was based on evidence that defendant not only possessed the shotgun, but also that he was armed with the firearm during his commission of the current offenses.  Specifically, the record establishes that defendant not only had a firearm "in [his] possession or under [his] custody or control"; he also was personally armed with the firearm on that date because he was carrying it and using it in a menacing manner to threaten his girlfriend—and, thus, had "ready access" (*Bland*, *supra*, 10 Cal.4th at p. 997) to—that firearm.  The record of conviction shows that on July 4, 1997, while arguing with his girlfriend about allowing a neighbor's dog to stay at the apartment, defendant retrieved a sawed-off shotgun from inside his apartment; and, while

---

**9**  Arguably, the prosecution could have charged a firearm enhancement under section 12022, subdivision (a) (armed with a firearm in the commission of a felony), or section 12022.5, subdivision (a) (personal use of a firearm in the commission of a felony).  There is, however, authority that suggests that such enhancement allegations would have been improper.  (See, e.g., *In re Pritchett*, *supra*, 26 Cal.App.4th at p. 1757 [firearm use enhancement to crime of possession of short-barreled shotgun stricken because although shotgun was used during the defendant's possession of the gun, it was not used "'in the commission'" of his crime of possession]; *People v. Arzate* (2003) 114 Cal.App.4th 390, 400-401 [gun use enhancement stricken because such use was "not committed in the commission of the static offense of carrying a concealed weapon in a vehicle." (Italics omitted.)])

16

holding the shotgun, told his girlfriend, " 'let's get it on.' " The record shows that several witnesses saw defendant in actual physical possession of the shotgun. A witness also saw defendant walk out of his apartment with a shotgun and hide the gun in nearby bushes.

Defendant contends that he could not use, or be armed, with a firearm during the commission of his current offenses, because the offenses for which he was convicted were firearm possession offenses, and there is no evidence to suggest he used or was armed with a firearm during the commission of another offense. Defendant appears to maintain that possessory offenses can never fall under the armed-with-a-firearm exclusion, because one cannot use, or be armed with a firearm "during the commission" of such offenses without another separate or tethering offense. We reject these arguments.

Where, as here, the record shows that a defendant convicted of possession of a firearm was armed with the firearm during the commission of that offense, the armed-with-a-firearm exclusion applies and the defendant is not entitled to resentencing relief under the Act. As previously noted, the record here demonstrates that defendant was in actual physical possession of the shotgun, and therefore armed with a firearm during the commission of his possessory offenses. Defendant's record of conviction shows the prosecution's case was based on evidence that defendant not only possessed the shotgun,

17

but also that he was armed with the shotgun during his commission of the current offenses.[10]

Defendant's exact arguments were recently rejected by our colleagues in Division One of the Fourth Appellate District in *White*, *supra*, 223 Cal.App.4th 512, and more recently by our colleagues in the Fifth Appellate District in *People v. Osuna* (2014) 225 Cal.App.4th 1020 (*Osuna*), petn. for review denied July 9, 2014, S218183. *White* deemed it appropriate for the court to look beyond the crime for which defendant had been sentenced to determine whether the "armed-with-a-firearm" exception to resentencing applied. (*White,* at p. 523.) There, the defendant had been convicted and sentenced as a felon in possession of a firearm. The court recognized that "possession of a firearm does not necessarily require that the possessor be armed with it" (*id*. at p. 524), but affirmed the denial of resentencing because "the record of conviction establishes that the applicable resentencing eligibility criterion set forth in section 1170.126[, subdivision] (e)(2) is not satisfied, and, thus, [the defendant] is ineligible for resentencing relief." (*Id*. at p. 524.)

The trial evidence in *White* showed that the prosecution's case was not based on the theory that White was guilty of possession of a firearm by a felon because he had constructive possession of the firearm; it was based on the theory that he was guilty of

---

[10] We note that while the record in this case shows defendant was in actual physical possession of a gun, a conviction for possession of a gun can also be based on constructive possession of the gun. (*Sifuentes*, *supra*, 195 Cal.App.4th at pp. 1417 & 1417, fn. 3)

18

that offense because he had *actual physical* possession of the firearm. (*White*, *supra*, 223 Cal.App.4th at p. 525.) The court noted: "The trial evidence shows the police officers conducting a surveillance of White's residence saw White walking towards his pickup truck and carrying a rolled-up cloth (sweatpants) with an object inside. The officers believed White might be armed, and when they moved towards him and drew their guns, White began to run, reached inside the rolled-up sweatpants he was carrying, and soon thereafter threw both the sweatpants and the object inside the sweatpants into the bed of his truck. The officers arrested White and found that the object he had thrown into the truck bed was a loaded .357-magnum revolver. [¶] Furthermore, the record shows White asserted in a pretrial motion that the object he threw into the back of his truck was 'a hand gun in a holster rolled up inside' the sweatpants. Also, White's counsel stipulated during his closing argument at trial that White had been armed." (*Ibid.*)

The court in *Osuna*, *supra*, 225 Cal.App.4th 1020 reached a similar conclusion. As in *White*, the defendant in *Osuna* was serving a three strikes sentence after having been convicted of being a felon in possession of a firearm, but the People did not allege he was armed with a firearm at the time or allege a sentence enhancement based on being armed with a firearm. (*Osuna*, at p. 1027.) The trial court denied the defendant's petition for resentencing, concluding he was ineligible because he was armed with a firearm during the commission of his offense. (*Id*. at p. 1028.) The appellate court concluded the record contained evidence that the defendant "had a firearm available for offensive or defensive use" during the commission of his offense, because he "was actually holding a handgun."

19

(*Id.* at p. 1030.) "Thus, factually he was 'armed with a firearm' within the meaning of the Act." (*Ibid.*)

In *Osuna*, *supra*, 225 Cal.App.4th 1020, the defendant argued he was not ineligible for resentencing under section 1170.126, subdivision (e)(2), because a finding of being armed with a firearm had to be tethered to an underlying conviction or there had to be a " 'facilitative nexus' " between the arming and the possession. (*Osuna*, at p. 1030.) The appellate court agreed tethering and a " 'facilitative nexus' " are required when imposing an " 'armed with a firearm' " sentence enhancement under section 12022. (*Osuna*, at pp. 1030-1031.) "However, unlike section 12022, which requires that a defendant be armed '*in* the commission of' a felony for additional punishment to be imposed (italics added), the Act disqualifies an inmate from eligibility for lesser punishment if he or she was armed with a firearm '*during* the commission of' the current offense (italics added). 'During' is variously defined as 'throughout the continuance or course of' or 'at some point in the course of.' [Citation.] In other words, it requires a temporal nexus between the arming and the underlying felony, not a facilitative one. The two are not the same. [Citation.]" (*Id*. at p. 1032.) "Since the Act uses the phrase '[d]uring the commission of the current offense,' and not in the commission of the current offense (§§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii)), and since at issue is not the imposition of additional punishment but rather eligibility for reduced punishment, we conclude the literal language of the Act disqualifies an inmate from

20

resentencing if he or she was armed with a firearm during the unlawful possession of that firearm." (*Ibid.*)

Applying *White* and *Osuna* to this case, we conclude defendant was armed with a firearm during the commission of his commitment offenses for possession of a firearm by a felon and possession of a short-barreled shotgun. Neither conviction requires a specific finding that the defendant was "armed with a firearm" during the commission of the offense, but both offenses may be committed by an armed defendant. As previously explained, "[a] defendant is armed if the defendant has the specified weapon available for use, either offensively or defensively. [Citations.]" " '[A] firearm that is available for use as a weapon creates the very real danger it will be used.' [Citation.] Therefore, '[i]t is the availability—the ready access—of the weapon that constitutes arming.' [Citation.]" (*Bland*, *supra*, 10 Cal.4th 991 at p. 997, italics omitted.) The defendant is considered armed even if the weapon is inoperable (*People v. Nelums* (1982) 31 Cal.3d 355, 359-360) or, as here, it is unloaded (*People v. Masbruch* (1996) 13 Cal.4th 1001, 1006-1007).

Our conclusion, that the record of defendant's conviction shows he is ineligible for resentencing relief is consistent with the purposes of the Act. As noted, the Act is intended to provide resentencing relief to low-risk, nonviolent inmates serving life sentences for petty crimes, such as shoplifting and simple drug possession. (Pamphlet, *supra*, text of Prop. 36, § 1, subds. (3), (4) & (5), p. 105.) Defendant's current offenses of felon in possession of a firearm and possession of a short-barreled shotgun—when

21

viewed in light of the fact that he was physically armed with the firearm during the commission of those offenses—cannot be deemed a petty or minor crime for purposes of the Act. The Act is also intended to limit eligibility for resentencing to inmates who have not committed current and prior offenses, including *gun-related felonies*. (Pamphlet, *supra*, Analysis by Legislative Analyst, pp. 49-50.)

      D.     *Use of Record of Conviction to Determine Eligibility*

Defendant argues that the People failed to present proper evidence regarding his section 1170.126 petition, claiming the trial court is limited to the "record of conviction" and that the police reports, probation report, and transcripts of the 911 call and witness statements submitted by the People are not proper sources of information regarding the factual circumstances of the crime. Defendant, however, did not object to the documents submitted by the People or challenge them. As such, defendant has forfeited this claim. (See Evid. Code, § 353; *People v. Abel* (2012) 53 Cal.4th 891, 924; *People v. Nelson* (2011) 51 Cal.4th 198, 223; *People v. Rivera* (2011) 201 Cal.App.4th 353, 360-361.)

In any event, this court's unpublished opinion in defendant's prior underlying appeal is sufficient evidence of the record of conviction. In *People v. Woodell* (1998) 17 Cal.4th 448 (*Woodell*), our Supreme Court held that the record of a prior conviction incorporated both the trial and appellate court record, including the appellate opinion. (*Id.* at p. 458.) In so holding, the *Woodell* court noted that "the appellate opinion itself, representing the action of a court, clearly comes within the exception to the hearsay rule for official records" (*ibid.*) and that it is "a judicial statement and can help determine the

22

nature of the crime of which the defendant had been convicted." (*Id*. at p. 459.)

" '[A]ppellate opinions, in general, are part of the record of conviction that the trier of fact may consider in determining whether a conviction qualifies under the sentencing scheme at issue.' [Citation.]" (*People v. Trujillo* (2006) 40 Cal.4th 165, 180-181 (*Trujillo*), quoting *Woodell*, *supra*, 17 Cal.4th 448 at p. 457.)  A trial court may look not only to the record of conviction for a particular crime when determining the facts underlying the offense for purposes of sentencing on a subsequent conviction, but to other records which contain sufficient procedural protections to ensure their reliability. (See *People v. Blackburn* (1999) 72 Cal.App.4th 1520, 1526-1527, 1531-1532 [Fourth Dist., Div. Two] [preliminary hearing transcript on prior offenses supported determination prior conviction was a serious felony]; *Trujillo*, at pp. 177-180 [same].)

We see no reason why the Act would change this rule.  (Accord, *White*, *supra*, 223 Cal.App.4th at p. 525 [reliance on record of conviction including information, pretrial motion, and closing argument]; *Blakely*, *supra*, 225 Cal.App.4th at pp. 1058-1063 [a trial court may examine relevant, reliable, admissible portions of the record of conviction to determine disqualifying factors]; *People v. Bradford* (2014) 227 Cal.App.4th 1322, 1336-1338 (*Bradford*) [determination of whether the defendant was disqualified from resentencing is based solely on evidence found in record of conviction akin to establishing the nature of a prior conviction for purposes of a sentencing enhancement but may not consider new evidence outside of the record of conviction].)  Accordingly, we find a trial court may rely on the record of conviction, including this court's prior

23

opinion in defendant's appeal from his original judgment and trial transcripts, as evidence to determine eligibility under the Act. (*Trujillo*, *supra*, 40 Cal.4th at pp. 180-181; *Woodell*, *supra*, 17 Cal.4th at p. 457.)

If the prior opinion does not sufficiently establish the facts, "the defendant, who suffered the conviction and took the appeal, would know of and be able to challenge any material flaws or omissions in the opinion." (*Woodell*, *supra*, 17 Cal.4th at p. 457.) Indeed, defendant makes no claim that our prior opinion misstated the facts or that the trial court misinterpreted the facts in our prior opinion. In such circumstances, we see no reason why a trial court's use of our prior opinion to determine the facts is improper. The opinion clearly indicates defendant was armed with and used a firearm during the commission of his possession of the firearm, and defendant does not argue otherwise on appeal. The record of defendant's conviction shows that defendant retrieved a sawed-off shotgun from inside his apartment; and while holding the shotgun, threatened his girlfriend. Hence, even if the People failed to present proper evidence to challenge defendant's eligibility under the Act, this court's prior opinion clearly indicates defendant was ineligible to be resentenced as a second strike offender under the Act.

E. *"Plead and Prove" Requirement*

The People argue that the resentencing provisions of section 1170.126 do not contain a pleading and proof requirement. Citing the "plead and prove" language contained in sections 667, subdivision (e)(2)(C), and 1170.12, subdivision (c)(2)(C) (discussed, *post*), defendant claims that the provisions of sections 1170.126, 667,

24

subdivision (e)(2)(C), and 1170.12, subdivision (c)(2)(C), "were enacted together as a complete package" and are "interrelated." Therefore, defendant asserts, the prosecution was required to have "pled and prove" that he used or was armed with a firearm, and since here the prosecution did not plead or prove that he used or was armed with a firearm during the commission of the current offenses, the armed-with-a-firearm exclusion does not apply.

Section 667, subdivision (e)(2)(C), provides in pertinent part that, "[i]f a defendant has two or more prior serious and/or violent felony convictions . . . and the current offense is not a serious or violent felony, . . . *the defendant shall be sentenced*" (italics added) as a second strike offender "unless the prosecution *pleads and proves*" (italics added) any of the four enumerated exceptions or exclusions set forth in clauses (i) through (iv) of section 667, subdivision (e)(2)(C). (*Kaulick, supra,* 215 Cal.App.4th 1279 at p. 1293).)

Section 1170.12, subdivision (c)(2)(C), similarly provides that, "[i]f a defendant has two or more prior serious and/or violent felony convictions . . . and the current offense is not a [serious or violent] felony . . . , *the defendant shall be sentenced*" (italics added) as a second strike offender "unless the prosecution *pleads and proves*" (italics added) any of the four enumerated exceptions or exclusions set forth in clauses (i) through (iv) of section 1170.12, subdivision (c)(2)(C). (See *Kaulick*, *supra*, 215 Cal.App.4th at p. 1293.)

We reject defendant's contention that the pleading and proof requirement set forth in both section 667, subdivision (e)(2)(C), and section 1170.12, subdivision (c)(2)(C), is incorporated into section 1170.126. Defendant's reliance on the plead-and-prove language is unavailing. ". . . Although section 1170.126, subdivision (e)(2), expressly cross-references clauses (i) to (iii), inclusive of sections 667, subdivision (e)(2)(C), and 1170.12, subdivision (c)(2)(C), nothing in the language of section 1170.126, subdivision (e)(2), or of any of the other subdivisions of section 1170.126 governing an inmate's petition for resentencing relief under the Reform Act references the plead-and-prove language." (*White*, *supra*, 223 Cal.App.4th at pp. 526-527.)

As the *White* court found, defendant's reference to the pleading and proof requirement "plainly is a part of only the *prospective* part of the Reform Act, which governs the *sentencing of a defendant* with two or more prior serious and/or violent felony convictions who has suffered a third felony conviction; it is *not* a part of section 1170.126, the *retrospective* part of the Reform Act that governs a petition for resentencing brought by an *inmate* already serving a life sentence under the Three Strikes law." (*White*, *supra*, 223 Cal.App.4th at p. 527, italics in original; accord, *Osuna*, *supra*, 225 Cal.App.4th at p. 1033; *Blakely*, *supra*, 225 Cal.App.4th at p. 1058.) The court in *Kaulick* explained: "[T]here are two parts to the Act: the first part is *prospective* only, reducing the sentence to be imposed in future three strike cases where the third strike is not a serious or violent felony (Pen. Code, §§ 667, 1170.12); the second part is *retrospective*, providing *similar*, but *not identical*, relief for prisoners already serving

26

third strike sentences in cases where the third strike was not a serious or violent felony (Pen. Code, § 1170.126)." (*Kaulick*, *supra*, 215 Cal.App.4th at p. 1292.)  The *Kaulick* court also explained that, "under the prospective part of the Act, if the defendant's current third strike offense is not serious or violent, and none of four enumerated exceptions applies, the defendant 'shall be' sentenced as if the defendant had only a single prior strike." (*Id.* at p. 1293.)

Thus, the Act requires pleading and proof when ineligibility for lenient treatment under the Act applies *prospectively*, that is, to persons currently charged with a three strikes offense that is not itself defined as serious or violent.  (§§ 667, subd. (e)(2)(C); 1170.12, subd. (c)(2)(C).)  No pleading and proof language appears in the part of the Act addressing relief to persons previously sentenced under the Three Strikes law. (§ 1170.126, subd. (e).)  The *retrospective* relief under section 1170.126 is conditioned upon an *eligible* commitment offense, which "*the* [*trial*] *court shall determine*" on "receiving a petition for recall of sentence under this section."  (§ 1170.126, subd. (f), italics added.)

Nowhere in the resentencing provisions of section 1170.126, subdivision (e), is there any reference to pleading and proof of disqualifying factors.  Generally speaking, a pleading and proof requirement will not be implied.  (See *People v. Griffis* (2013) 212 Cal.App.4th 956, 962-965.)  Instead, as noted above, under section 1170.126, subdivision (f), "the [*trial*] *court shall determine* whether the petitioner satisfies the criteria in subdivision (e)."  (Italics added.)  There is no provision for the People to plead

or prove anything, the burden falls on the trial court to make the determination whether a defendant meets the prima facie criteria for recall of sentence.

In rejecting an interpretation that a defendant becomes presumptively entitled to resentencing absent proof of dangerousness beyond a reasonable doubt, *Kaulick*, *supra*, 215 Cal.App.4th 1279, notes it is determinative that the drafters omitted any requirement for the pleading and proof of dangerousness in the latter statute.  (*Id*. at p. 1303, fn. 26; see *id*. at pp. 1298-1299, fn. 21 [dictum; "[b]y its terms" § 1170.126 does not require pleading and proof of circumstances rendering commitment offense ineligible].)  Nothing in the plain language of section 1170.126, subdivision (e)(2), requires that the ample disqualifying facts demonstrating defendant was armed with a firearm during the commission of his commitment offenses had to have been pleaded and proven at his trial. (E.g., *White*, *supra*, 223 Cal.App.4th at p. 527 [no pleading and proof requirement under § 1170.126]; *Blakely*, *supra*, 225 Cal.App.4th at pp. 1058-1059; *Osuna*, *supra*, 225 Cal.App.4th at p. 1033 [same]; *Bradford*, *supra*, 227 Cal.App.4th at pp. 1333-1334 [same].)  Therefore, section 1170.126 does not of itself support defendant's claim that his ineligibility was subject to pleading and proof in the proceedings underlying the commitment offenses of being armed with a firearm during the commission of the offenses.

We also reject defendant's assertion that using a disqualifying factor not pled and proved to the jury would violate his constitutional rights to due process and a jury trial

28

under *Apprendi*, *supra*, 530 U.S. 466 and its progeny.  He argues that he was entitled to a jury trial to determine whether he was armed with a gun.

Considered in conjunction with each other, the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution require that each element of a crime or sentence enhancement be proved to the jury beyond a reasonable doubt.  (*United States v. Gaudin* (1995) 515 U.S. 506, 509-510; *In re Winship* (1970) 397 U.S. 358, 364; *People v. Jones* (1999) 75 Cal.App.4th 616, 631.)  *Apprendi* states that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  (*Apprendi*, *supra*, 530 U.S. 466 at p. 490.)  Subsequently, in *Blakely v. Washington* (2004) 542 U.S. 296, the high court clarified that the "prescribed statutory maximum" for purposes of the right to a jury trial is not necessarily the maximum penalty provided by statute for the crime; rather, it is "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."  (*Id*. at p. 303, italics omitted.)  And in *Alleyne v. United States* (2013) __ U.S. __ [133 S.Ct. 2151, 186 L.Ed.2d 314] the same court declared that a fact which increases the mandatory minimum sentence must likewise be submitted to a jury, and proved beyond a reasonable doubt.  (133 S.Ct. at p. 2154, 186 L.Ed.2d at p. 321.)  Thereafter, the high court in *Cunningham v. California* (2007) 549 U.S. 270, explained that, "under the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a

preponderance of the evidence." (*Id*. at p. 281.) Defendant's reliance on these cases is based upon a contention that because the finding that defendant was armed with or used a firearm during the felon in possession of a firearm offense increased the mandatory minimum term of the resentencing provision from a two strikes sentence to a three strikes sentence, he was entitled to a have jury determine whether he was armed with or used a gun.

Of course, constitutional requirements supersede statutory language. Defendant, however, misapplies *Apprendi* and its progeny to resentencing petitions under section 1170.126. The determinations required under section 1170.126 are not factors justifying enhancing a defendant's sentence beyond the statutory maximum. (See *Kaulick*, *supra*, 215 Cal.App.4th at pp. 1302-1304.) As such, "the United States Supreme Court has already concluded that its opinions regarding a defendant's Sixth Amendment right to have essential facts found by a jury beyond a reasonable doubt do not apply to limits on downward sentence modifications due to intervening laws." (*Id*. at p. 1304, citing *Dillon v. United States* (2010) 560 U.S. 817, 828-829 (*Dillon*).) "The retrospective part of the Act is not constitutionally required, but an act of lenity on the part of the electorate. It does not provide for wholesale resentencing of eligible petitioners. Instead, it provides for a proceeding where the original sentence may be modified downward. Any facts found at such a proceeding, such as dangerousness, do not implicate Sixth Amendment issues. Thus, there is no constitutional requirement that the facts be established beyond a reasonable doubt." (*Kaulick*, at pp. 1304-1305.)

30

The failure of the applicability of these cases here lies in the difference between a proceeding which would *increase* a sentence and one which would *decrease* the sentence. The resentencing provisions under section 1170.126 are akin to a hearing regarding "downward sentence modifications due to intervening laws" (*Kaulick*, *supra*, 215 Cal.App.4th at p. 1304; see also *Dillon*, *supra*, 560 U.S. at p. 829), and therefore *Apprendi* and the limitations of the Sixth Amendment do not apply to resentencing determinations. (Accord, *White*, *supra*, 223 Cal.App.4th at p. 527; see *Osuna*, *supra*, 225 Cal.App.4th at p. 1039 ["*Apprendi* and its progeny do not apply to a determination of eligibility for resentencing under [section 1170.126]"]; *Blakely*, *supra*, 225 Cal.App.4th at p. 1060 [same].) "A finding an inmate is not eligible for resentencing under section 1170.126 does not increase or aggravate that individual's sentence; rather, it leaves him or her subject to the sentence originally imposed." (*Osuna*, at p. 1040; *Blakely*, at p. 1061.) A trial court's determination that a defendant is ineligible for resentencing pursuant to section 1170.126 does "not increase the penalty to which [a] defendant [is] already subject, but instead disqualifie[s] [a] defendant from an act of lenity on the part of the electorate to which [a] defendant was not constitutionally entitled." (*Osuna*, at p. 1040; *Blakely*, at p. 1062.) Here, defendant sought relief under the retrospective portion of the Act which is the result of an act of lenity and, therefore, does not entitle defendant to a jury determination of eligibility.

In sum, we conclude that, where the record establishes the prosecution's case was based on the theory a defendant convicted of possession of a firearm by a felon used or

31

was armed with the firearm, e.g., he had a firearm capable for ready use, during the commission of that offense, the armed-with-a-firearm exclusion applies and, thus, a defendant is not entitled to resentencing relief under the Act. We also hold that, in such a case, a trial court may deny section 1170.126 resentencing relief under the armed-with-a-firearm exclusion even if the accusatory pleading did not allege he or she used or was armed with a firearm during the commission of that possessory offense.

Accordingly, we will reverse the order granting defendant's petition for a recall of his life sentence and for resentencing as a second strike offender under the Act.

III

DISPOSITION

The order granting defendant's petition for a recall of his life sentence and for resentencing as a second strike offender under the Act is reversed.

CERTIFIED FOR PUBLICATION

RAMIREZ
P. J.

We concur:


KING
J.


MILLER
J.

32