Filed 12/15/21 P. v. Love CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>GLEN QUINTRELL LOVE,<br><br>    Defendant and Appellant. | 2d Crim. No. B302725<br>(Super. Ct. No. YA040317)<br>(Los Angeles County) |

Glen Quintrell Love appeals an order denying his petition for resentencing (Pen. Code,[1] § 1170.95) of his first degree murder conviction. In 1999, he was convicted of second degree robbery (§ 211) and first degree murder with a robbery-murder special circumstance finding. (§§ 187, 189, 190.2, subd. (a)(17)(A).)

---

[1] All statutory references are to the Penal Code.

In 2019, Love filed a petition for resentencing. The trial court issued an order to show cause on his section 1170.95 petition and held an evidentiary hearing. It found Love was not entitled to resentencing because he was "a major participant and acted with reckless indifference" to human life. We conclude, among other things, that Love has not shown that the trial court erred by denying his petition. We affirm.

FACTS

Raymond Williams was fatally shot one night after he won money gambling. On the night of April 11, 1997, Chaka Thomas picked up Love and drove to a dice game in Hawthorne. Several other men were there, including Lamar Salone and Williams. Salone showed Thomas a semiautomatic pistol and said he was "strapped." Love participated in the dice game and lost money.

Williams won his bets that evening and boasted about his luck to the others. He left the game and drove away in his van. Thomas left the game shortly after Williams departed and was joined by Love and Salone. According to Thomas, he decided to drive them home because he was nervous about Salone having a gun.

When they reached the corner of 139th Street and Kornblum Avenue, Salone asked Thomas to stop the car so he could use the telephone. Thomas parked near a phone booth and

2

Salone got out, followed by Love. A few moments later, Thomas heard four or five gunshots. Love ran back to the car and excitedly told Thomas, "Let's go." As they were driving away, Love told Thomas that Williams "started trippin so we had to knock him off." He showed Thomas a roll of money and offered him some, which Thomas refused.

Williams was still breathing after being shot. He was alive when police and paramedics arrived, but he died after being taken to the hospital.

On the day after the shooting, Thomas and Salone drove to Love's house, where they all discussed the crime and agreed on a story about Thomas giving Love a ride on the night of the dice game after Love's car overheated.

Herschel Houston attended the dice game on April 11. He told police that he had a conversation with Love. Love described the robbery and shooting. Love said that he had "jacked" Williams and that Williams had been shot in the head; Salone had fired the gun after Williams made a "funny" move.

Love was convicted of second degree robbery and first degree murder with a robbery-murder special circumstance finding. We affirmed his conviction. We ruled that the evidence was sufficient to support the robbery-murder special circumstance finding and that Love was a major participant in the robbery and he acted with reckless indifference to human life.

On January 4, 2019, Love filed a petition for resentencing under section 1170.95. The trial court issued an order to show cause for an evidentiary hearing. At the hearing the court found Love was ineligible for resentencing under section 1170.95. It found Love was "a major participant and acted with reckless indifference" to human life.[2]

## DISCUSSION

*Denying the Section 1170.95 Petition*

Love contends the trial court erred by denying his section 1170.95 petition. We disagree.

The origin of section 1170.95 was the Governor's signing of Senate Bill No. 1437 in 2018. (Stats. 2018, ch. 1015, § 4.) "Senate Bill 1437 'amend[s] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person *who is not the actual killer*, did not act with the intent to kill, or *was not a major participant in the underlying felony who acted with reckless indifference to human life.*' " (*People v. Gutierrez-Salazar* (2019) 38 Cal.App.5th 411, 417, italics added.)

A defendant convicted of felony murder may file a petition under section 1170.95 alleging he or she "could not be convicted of first or second degree murder" because of changes to the law required by Senate Bill No. 1437. (*People v. Gutierrez-*

---

[2] We grant respondent's request for judicial notice.

*Salazar, supra*, 38 Cal.App.5th at p. 417.) "A trial court receiving a petition under section 1170.95 'shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section.' (§ 1170.95, subd (c).)" (*Ibid.*) "If the petitioner has made such a showing, the trial court 'shall issue an order to show cause.' " (*Ibid.*) The trial court must then hold a hearing to determine whether to vacate the murder conviction and resentence the petitioner. (*Ibid.*)

Consequently, there are two stages involved in a section 1170.95 petition. If a prima facie showing is made for relief in the first stage, the trial court proceeds to the second stage and issues an order to show cause and the case proceeds to an evidentiary hearing. Where the prima facie showing is not made in the first stage, the court may deny the petition.

*The Evidentiary Hearing*

This case went to a second stage section 1170.95 evidentiary hearing and we will review the trial court's findings from the record of that proceeding.

"At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing. If the prosecution fails to sustain its burden of proof, the prior conviction, and any

5

allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges. *The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens*." (§ 1170.95, subd. (d)(3), italics added.)

At the hearing, after the presentation of new evidence or the record of conviction, the trial court will weigh the evidence, draw inferences, and make credibility assessments. (*People v. Duchine* (2021) 60 Cal.App.5th 798, 816.) " '[I]f the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*People v. Lewis* (2021) 11 Cal.5th 952, 971.) We apply the substantial evidence standard of review on appeals from second stage section 1170.95 hearings. (*People v. Lopez* (2020) 56 Cal.App.5th 936, 954, review granted Feb. 10, 2021, S265974.)

Senate Bill No. 1437 does not provide resentencing relief for a defendant convicted of murder who was " 'a major participant in the underlying felony who acted with reckless indifference to human life.' " (*People v. Gutierrez-Salazar*, *supra*, 38 Cal.App.5th at p. 417.) Here the trial court found Love was a major participant who acted with reckless indifference to human

6

life.  The People contend these findings are supported by the record.

After the trial court issued the order to show cause, the People elected to rely on the "record of conviction." (§ 1170.95, subd. (d)(3).)  They attached the appellate decision that affirmed Love's conviction and they relied on the statement of facts in that decision.

Love responded by filing a 43-page set of points and authorities and a copy of a 2014 declaration by defendant Salone which had been prepared for a prior proceeding.  In that declaration, Salone stated in conclusory terms, "Glen Love had nothing to do with the robbery or murder.  I acted alone."  This was not new evidence.  The trial court had previously rejected claims based on that 2014 declaration.  The court said, "I'm not going to retry that."  Moreover, **t**he credibility of that declaration is a matter exclusively decided by the trial court at the section 1170.95 evidentiary hearing.  (*People v. Lewis*, *supra*, 11 Cal.5th at p. 971; *People v. Duchine*, *supra*, 60 Cal.App.5th at p. 816.)

At the hearing Love appeared with counsel.  He had the opportunity to present new evidence to show his eligibility for section 1170.95 relief.  (§ 1170.95, subd. (d)(3).)  But Love did not testify.  He did not summit a declaration.  He did not call any witnesses.  He did *not present any evidence*.  His counsel simply made oral arguments.  Most of those arguments related to facts

7

in the record of conviction found in the decision that affirmed Love's conviction.

In that 2001 decision, we affirmed the special circumstances findings. We rejected Love's claims that he was not a major participant in the robbery and that he did not act with reckless indifference to human life. We cited facts from the record of conviction to show why these claims lacked merit. We said: 1) Love "was riding in a car with Thomas and Salone, who was armed with a gun"; 2) "Love left the car with Salone, approached Williams, and, by his own later admission to Herschel Houston, 'jacked' Williams"; 3) "Salone shot Williams when Williams resisted, and Love took money from Williams' pockets"; and 4) "Love had a motive to rob Williams because Williams had won money gambling that evening while Love had lost his bets."

We also stated, "The jury could reasonably infer from this evidence that Love *acted with reckless indifference to human life when he and an armed cohort approached Williams to rob him at gunpoint*." (Italics added.) We said the jury "could further infer that Love was *a major participant* in the robbery based on," 1) "his presence at the scene of the robbery and shooting," 2) "his admission that he *had 'jacked' Williams*," and 3) "his *removal of the money* from Williams' pocket." (Italics added.)

At the end of the second stage section 1170.95 hearing, the trial court made the following findings: 1) "Mr. Salone was armed with a gun. Mr. Love left the car with Mr. Salone, or within seconds after Mr. Salone left, approached the victim"; 2) Love "admitted when he returned to the car that he jacked the victim"; 3) "four or five gunshots were heard"; 4) "Mr. Love had a motive to rob Mr. Williams because he had gambled with Mr. Williams, and lost money to Mr. Williams"; and 5) "Mr. Love returned to the car, and showed everyone a roll of money" and "admitted to jacking Mr. Williams" with "knowledge that Mr. Salone had fired the gun." These findings are supported by the record.

Love contends there are inferences that may be drawn to support his section 1170.95 petition. But he did not take advantage of his opportunity to present evidence to support such inferences. Because the facts in the record support the trial court's findings, Love may not claim that the court should have drawn different inferences based on claims that are not supported by evidence. The trial court may not draw inferences based on speculation.

Love claims the trial court's findings and the jury's prior special circumstances findings are not consistent with current legal standards involving findings involving major participants acting with reckless indifference to human life, and

9

they consequently cannot be considered in denying a section 1170.95 petition.  We disagree.

Here there are unfavorable *Scoggins*, *Banks*, and *Clark* factors for Love.  Love had a motive to rob the victim.  He was physically present at the crime scene.  He approached the victim with the killer.  He had the opportunity to help the victim, but elected not to.  (*In re Scoggins* (2020) 9 Cal.5th 667, 677.)  Under *People v. Clark* (2016) 63 Cal.4th 522, 621, Love failed to take "[e]fforts to [m]inimize the [r]isks of the [v]iolence [d]uring the [f]elony."  (Italics omitted.)  A relevant factor under *People v. Banks* (2015) 61 Cal.4th 788, 803, is "[w]hat did the defendant do after lethal force was used?"  Here Love took advantage of the injured victim and profited from the crime.  Later he met with the killer and they all "agreed on a story" they could tell.

The People also claim Love makes the claim that he was not a "major" participant by omitting consideration of *the six factors showing his active participation*, including that Love:  1) "rode in [the] car with Thomas and Salone," 2) "left the car with Salone," 3)  "approached Williams," 4) "admitted" he " 'jacked' Williams," 5) "took money from Williams' pockets," and 6) "had a motive to rob Williams."

In addition to these six factors the People highlight, Love also made the incriminating admission, "*we* had to knock

him off." (Italics added.) The word "we" supports a finding of his joint participation in the crime.

The People also cite *People v. Douglas* (2020) 56 Cal.App.5th 1 and claim it refutes Love's claims that he did not act with reckless indifference to human life. In *Douglas*, after a victim was shot, the court noted that the defendant "displayed no interest in moderating violence or in aiding his bloody and suffering victim. Rather, [defendant] *picked his pocket*." (*Id.* at p. 10, italics added.) This describes Love's conduct. Love did not stop to help Williams; instead Love, like the defendant in *Douglas*, "picked his pocket."

*Trial Court's Reliance on Inadmissible Evidence?*

Love contends the facts in the appellate decision that affirmed his conviction are inadmissible at a second stage section 1170.95 evidentiary hearing. He claims the trial court erred by citing those facts. But our Supreme Court has rejected this claim. (*People v. Lewis*, *supra*, 11 Cal.5th at p. 971.)

Moreover, during that hearing the trial court asked Love's counsel, "[T]he court is allowed to consider the record of conviction and the record of conviction contains the record of facts that the court of appeals relies on, does it not?" Love's counsel: "It does."

The statute provides, "The prosecutor and the petitioner may rely on *the record of conviction* . . . to meet their

11

respective burdens." (§ 1170.95, subd. (d)(3), italics added.) " 'A court of appeal opinion . . . is part of the appellant's record of conviction." (*People v. Garcia* (2020) 57 Cal.App.5th 100, 111, review granted Feb. 10, 2021, S265692; see also *People v. Woodell* (1998) 17 Cal.4th 448, 455.)

Love contends the trial court erred by relying on the facts in a petition for review to the California Supreme Court.

But the People correctly note that Love forfeited this claim because he "failed to lodge an objection in the trial court." (*People v. Brimmer* (2014) 230 Cal.App.4th 782, 799-800.) And on the merits, the result does not change.

The trial court mentioned that it had "looked at" the petition for review. But in making its findings it referred to the record of conviction. It said it considered what the Court of Appeal had "summarized" as the "evidence at trial." The trial court's statement that it had considered other documents does not show reversible error where its findings show it relied on admissible evidence. (*People v. Lopez, supra*, 56 Cal.App.5th at p. 954.)

We have reviewed Love's remaining contentions and we conclude he has not shown grounds for reversal.

DISPOSITION

The order denying the section 1170.95 petition is affirmed.

NOT TO BE PUBLISHED.

GILBERT, P. J.

We concur:

YEGAN, J.

PERREN, J.

13

Laura C. Ellison, Judge

Superior Court County of Los Angeles

_____

Donna L. Harris, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Xavier Becerra, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.