Filed 12/27/23  P. v. Bailey CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C098160 |
| Plaintiff and Respondent, | (Super. Ct. No. 96F05331) |
| v. | |
| WILLIE BAILEY III, | |
| Defendant and Appellant. | |

In 1997, a jury convicted defendant Willie Bailey III of two counts of murder and found true the enhancement he used a firearm during the murders.  The jury also found true the special circumstance that defendant perpetrated the murders by means of intentionally discharging a firearm from a motor vehicle at persons outside the vehicle with the intent to inflict death.  In 2022, he filed a second petition for resentencing

1

pursuant to Penal Code section 1172.6,[1][2] and the trial court denied it. On appeal, he argues that the trial court erred in denying his petition based on the jury's finding on the special circumstance because the trial court engaged in impermissible factfinding. He also contends he established a prima facie case for eligibility for resentencing because the trial court's use of CALJIC No. 3.01 allowed the jury to convict him of first degree murder as an aider and abettor without finding he committed that murder with the intent to kill. We shall affirm.

## I. BACKGROUND

The information charged defendant with two counts of first degree murder. (§ 187, subd. (a).) It further alleged enhancements that defendant personally used a firearm in the murder (§ 12022.5, subd. (a)), and that a principal was armed with a firearm (§ 12022, subd. (a)). The information alleged the special circumstances of multiple murders (§ 190.2, subd. (a)(3)) and the murders were perpetrated by means of discharging a firearm from a motor vehicle intentionally at another person with the intent to inflict death ("drive-by special circumstance") (§ 190.2, subd. (a)(21)).

The following background is taken from our nonpublished opinion in defendant's direct appeal, *People v. Bailey* (June 30, 2001, C028788) (*Bailey*).[3]

---

[1] Undesignated statutory references are to the Penal Code.

[2] Defendant filed his first petition under former section 1170.95. Effective June 30, 2022, the Legislature renumbered former section 1170.95 to section 1172.6. (Stats. 2022, ch. 58, § 10.) There were no substantive changes to the statute in the renumbering legislation. We will cite to the current section 1172.6 throughout this opinion. As noted below, defendant filed a second petition under section 1172.6, which is the subject of this appeal.

[3] We do not use these facts in our analysis but present them to give context to our discussion, as this case turns solely on the jury's findings and instructions. We acknowledge the split of authority on whether these facts may be used at the prima facie stage, but do not resolve that issue given our disposition of this case. (Compare *People v.*

In June 1996, two men at a party in south Sacramento were shot and killed by bullets fired from codefendant Martin's car which was driving by on the street. (*Bailey*, *supra*, C028788.)

The day after the shooting, Martin reported his car stolen. Martin admitted he had been in the car from which the fatal shots were fired. Martin said two men forced him to drive his car in accordance with their directions and a man shot three or four times from the rear passenger window while the car was moving. Martin admitted making two passes in front of the house where the victims were shot but denied ever seeing a rifle in the car or having any awareness of a plan to shoot from the window of his car. (*Bailey*, *supra*, C028788.)

Defendant and Martin attended a different party that evening. At defendant's direction, defendant, Martin and another man, Anthony Juarez, got into Martin's car. Juarez was in the front seat; Martin was driving; and defendant " 'got in the back.' " The three drove off in Martin's car. Martin returned alone on foot and complained that his ears were ringing. (*Bailey*, *supra*, C028788.)

Later that morning, defendant returned to the apartment and told Juarez, " '[Y]ou need to help me come find the gun.' " Juarez declined. (*Bailey*, *supra*, C028788.) Defendant threatened a witness to his conversation with Juarez by saying, " 'Nobody better not say shit or you're going to end up like them, too.' " (*Bailey*, *supra*, C028788.)

A few days later, when asked about the shooting, defendant told a friend (who was also a friend of the victim), "[T]hat's one of those Crips were shooting at those [B]loods. (*Sic*.) " In subsequent conversations, defendant told the friend that defendant had been

---

*Brimmer* (2014) 230 Cal.App.4th 782, 800 [holding a prior appellate opinion is part of the record of conviction that may be used at the prima facie stage] with *People v. Flores* (2022) 76 Cal.App.5th 974, 988 [suggesting in dicta that opinion may not be used at the prima facie stage].)

accused of the murder, admitted that he was present at the shooting, and threatened to retaliate if the friend reported him to the police. (*Bailey*, *supra*, C028788.)

In tape recordings of telephone calls played to the jury, defendant said the victim shot at him, his friend was hit, and he could have been killed. Defendant said he was armed with a pistol that night and asked his friend how she would feel if she got shot at while minding her own business. Defendant said, in that instance, if she was armed, she would shoot back. Defendant said he did not know the victim or that the victim was going to die. (*Bailey*, *supra*, C028788.)

Defendant, Martin, and Juarez were all charged with the murders of the two men. Only defendant and Martin were held to answer for the murders after the preliminary hearing. (*Bailey*, *supra*, C028788.)

Defendant's and Martin's chief defenses were misidentification and that the victims could have been killed either by shots fired from a car other than Martin's, or by shots fired by partygoers. Further, defendant denied it was his voice in the tape recorded conversations. (*Bailey*, *supra*, C028788.)

During trial, the trial court did not instruct the jury on the concept of natural and probable consequences or any form of felony murder. The trial court did instruct the jury on general principles of aiding and abetting using CALJIC Nos. 3.00 and 3.01, as well as specific jury instructions related to murder.

CALJIC No. 3.00 stated, "Persons who are involved in committing a crime are referred to as principals in that crime. Each principal, regardless of the extent or manner of participation is equally guilty." The instruction defines principals as "[t]hose who directly and actively commit the act constituting the crime," or "[t]hose who aid and abet the commission of the crime."

The court also instructed the jury with CALJIC No. 3.01, which stated in relevant part that, "[a] person aids and abets the commission of a crime when he or she: [¶] (1) with knowledge of the unlawful purpose of the perpetrator, and [¶] (2) with the

4

intent or purpose of committing or encouraging or facilitating the commission of the crime, and  [¶]  (3) by act or advice aids, promotes, encourages, or instigates the commission of the crime."

The trial court instructed the jury on first and second degree murder using several CALJIC instructions:  CALJIC No. 8.10 (Murder -- Defined); CALJIC No. 8.11 (Malice Aforethought -- Defined); CALJIC No. 8.20 (Deliberate and Premeditated Murder); CALJIC No. 8.25.1 (Drive-By-Murder); CALJIC No. 8.27 (First Degree Felony Murder -- Aider and Abettor); CALJIC No. 8.30 (Unpremeditated Murder of Second Degree); CALJIC No. 8.31 (Second Degree Murder -- Killing Resulting From Unlawful Act Dangerous to Life); CALJIC No. 8.32 (Second Degree Felony Murder -- Aider and Abettor); and CALJIC No. 8.34 (Second Degree Felony Murder -- Aider and Abettor).

The instructions specified the jury could find defendant guilty of first degree murder only if it found defendant had express malice aforethought, i.e., the specific intent to kill.  (CALJIC Nos. 8.10, 8.11, 8.20, 8.27.)  As it related to the specific instruction on drive-by murder, under CALJIC No. 8.25.1, the court instructed the jury, "Murder which is perpetrated by means of discharging a firearm from a motor vehicle intentionally at another person outside of the vehicle when the perpetrator specifically intended to inflict death, is murder of the first degree.  [¶]  The essential elements of drive-by murder are:  [¶]  1.  The defendant committed the crime of murder;  [¶]  2.  The defendant perpetrated the murder by means of discharging a firearm from a motor vehicle intentionally at another person outside of the vehicle; and  [¶]  3.  The defendant specifically intended to kill a human being."

As to the special-circumstance allegations, the trial court instructed the jury with CALJIC No. 8.80.1 (Special Circumstances -- Introductory) and CALJIC No. 8.81.21 (Special Circumstances -- Intentional Discharge of a Firearm From a Motor Vehicle).

The introductory instruction stated,  "If you find a defendant in this case guilty of murder of the first degree, you must then determine if one or more of the following

5

special circumstances is true or not true: . . . intentional discharge of a firearm from a motor vehicle. [¶] . . . [¶] If you find that a defendant was not the actual killer of a human being, or if you are unable to decide whether the defendant was the actual killer or an aider and abettor, you cannot find the special circumstance to be true as to that defendant unless you are satisfied beyond a reasonable doubt that such defendant with the intent to kill aided, abetted, counseled, commanded, induced, solicited, requested, or assisted any actor in the commission of the murder in the first degree." (CALJIC No. 8.80.1.)

The drive-by special-circumstance instruction instructed the jury: "To find that the special circumstance, referred to in these instructions as murder by means of an intentional discharge of a firearm from a motor vehicle is true, it must be proved: [¶] 1. The murder was perpetrated by means of discharging a firearm from a motor vehicle; [¶] 2. The perpetrator intentionally discharged the firearm at another person or persons outside the vehicle; and [¶] 3. The perpetrator, at the time he discharged the firearm, specifically intended to inflict death." (CALJIC No. 8.81.21.)

The jury found defendant guilty of both counts of first degree murder. (§ 187, subd. (a).) It also found true the multiple-murder special circumstance and the drive-by special circumstance as to both murders. (§ 190.2, subd. (a)(3) & (a)(21).) Further, the jury found true defendant personally used a weapon in the murders. (§ 12022.5, subd. (a).)[4]

The trial court sentenced defendant to two separate terms of life in prison without the possibility of parole for the two special-circumstance murders, plus 10 years on each of the firearm-use allegations.

---

[4] The jury also found Martin guilty of second degree murder and found not true both the enhancement he was personally armed with a firearm and the drive-by special-circumstance allegation.

6

Defendant filed two petitions for resentencing under section 1172.6. The first petition was filed in February 2019. The trial court denied that petition in June 2021. The trial court concluded defendant was not found guilty of murder under the felony-murder rule or under the natural and probable consequences theory. It further found the jury verdicts demonstrated the jury found defendant acted with the intent to kill whether he was the actual killer or an aider and abettor and this rendered defendant ineligible as a matter of law for resentencing under section 1172.6. The record contains no appeal of this ruling.

Defendant filed a second petition for resentencing under section 1172.6 in February of 2022 under the auspices of Senate Bill No. 775 (2021-2022 Reg. Sess.). Defendant contended the jury was not properly instructed on malice. He also raised issues concerning the evidence admitted against him at trial. Defendant attached a copy of the reporter's transcript of the jury's verdict. The People opposed the motion as procedurally barred as a second petition and on the merits.

After a hearing, the trial court found the jury's findings on the special circumstance conclusively proved defendant was convicted of murder with malice aforethought, making him ineligible for relief and denied the petition.

Defendant filed a timely notice of appeal.

## II. DISCUSSION

Defendant argues the trial court erred when it found defendant ineligible for relief based on the jury's finding on the special circumstance because the court made in an impermissible factual determination at the prima facie stage, and further argues he made a prima facie showing the prosecution proceeded under a theory of felony murder. He also argues the trial court's use of CALJIC No. 3.01 allowed the jury to convict him of murder without finding he personally intended to kill. We disagree.

A.      *Senate Bill No. 1437*

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill No. 1437) was enacted "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).)  The legislation accomplished this by amending sections 188 and 189 and adding section 1172.6 to the Penal Code.

Senate Bill No. 1437 amended the felony-murder rule by adding section 189, subdivision (e). (*People v. Harden* (2022) 81 Cal.App.5th 45, 50-51; see *People v. Strong* (2022) 13 Cal.5th 698, 707-708 (*Strong*).)  Section 189, subdivision (e) now limits the circumstances under which a person may be convicted of felony murder:  "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) [defining first degree murder] in which a death occurs is liable for murder only if one of the following is proven:  [¶]  (1) The person was the actual killer.  [¶]  (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.  [¶]  (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of [s]ection 190.2." (Stats. 2018, ch. 1015, § 3.)

Senate Bill No. 1437 also "amended the natural and probable consequences doctrine by adding subdivision (a)(3) to section 188, which states that '[m]alice shall not be imputed to a person based solely on his or her participation in a crime.' (§ 188, subd. (a)(3), added by Stats. 2018, ch. 1015, § 2.)" (*People v. Harden*, *supra*, 81 Cal.App.5th at p. 51; see *Strong*, *supra*, 13 Cal.5th at pp. 707-708.)  This language eliminated the use of the natural and probable consequences doctrine in murder

8

prosecutions but left "personally possessing malice aforethought a necessary element of murder." (*People v. Gentile* (2020) 10 Cal.5th 830, 846.)

These amendments did "not eliminate direct aiding and abetting liability for murder because a direct aider and abettor to murder must possess malice aforethought." (*People v. Gentile*, *supra*, 10 Cal.5th at p. 848.) Put another way, "section 189, as amended, now limits liability under a felony-murder theory principally to 'actual killer[s]' (Pen. Code, § 189, subd. (e)(1)) and those who, 'with the intent to kill,' aid or abet 'the actual killer in the commission of murder in the first degree' (*id.*, subd. (e)(2))." (*Strong*, *supra*, 13 Cal.5th at p. 708.) For a direct aider and abettor, this requisite intent to kill is established if the "accomplice aids the commission of that offense with 'knowledge of the direct perpetrator's unlawful intent and [with] an intent to assist in achieving those unlawful ends.' " (*Gentile*, at p. 843.) Thus, a defendant who aided and abetted a murder with the intent to kill is also ineligible for resentencing under section 1172.6 as a matter of law.

"Senate Bill No. 1437 also created a special procedural mechanism for those convicted under the former law to seek retroactive relief under the law as amended," now codified in section 1172.6. (*Strong*, *supra*, 13 Cal.5th at p. 708.) It permits "a person with an existing conviction for felony murder or murder under the natural and probable consequences doctrine to petition the sentencing court to have the murder conviction vacated and to be resentenced on any remaining counts if he or she could not have been convicted of murder as a result of the other legislative changes implemented by Senate Bill No. 1437." (*People v. Flores* (2020) 44 Cal.App.5th 985, 992.) Section 1172.6, subdivisions (b) and (c) create a two-step process for evaluating a petitioner's eligibility for relief. (*People v. Lewis* (2021) 11 Cal.5th 952, 960 (*Lewis*).) In the first step, the trial court determines whether the petition is facially sufficient under section 1172.6, subdivision (b). (*Lewis*, 960)

9

To establish a prima facie case for eligibility under section 1172.6, a defendant must show that a complaint, information, or indictment was filed against him that allowed the prosecution to proceed under a theory of murder or attempted murder under the felony murder and/or the natural and probable consequences doctrine. (§ 1172.6, subd. (a)(1).) He must also show he was convicted of murder or attempted murder and that he could not presently be convicted of such because of changes to section 188 or 189. (§ 1172.6, subd. (a)(2) & (a)(3).) "When the trial court receives a petition containing the necessary declaration and other required information, the court must evaluate the petition 'to determine whether the petitioner has made a prima facie case for relief.' [Citations.] If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition." (*Strong*, *supra*, 13 Cal.5th at p. 708, citing *Lewis*, *supra*, 11 Cal.5th at pp. 970-972.)

"[T]he 'prima facie bar was intentionally and correctly set very low.' " (*Lewis*, *supra*, 11 Cal.5th at p. 972.) The trial court must accept the defendant's allegations as true and "should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Ibid.*) "The record of conviction will necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless. This is consistent with the statute's overall purpose: to ensure that murder culpability is commensurate with a person's actions, while also ensuring that clearly meritless petitions can be efficiently addressed as part of a single-step prima facie review process." (*Lewis*, at p. 971.)

Here, the trial court denied defendant's petition at the prima facie stage. " 'A denial at that stage is appropriate only if the record of conviction demonstrates that "the petitioner is ineligible for relief as a matter of law." [Citations.] This is a purely legal conclusion, which we review de novo.' " (*People v. Ervin* (2021) 72 Cal.App.5th 90, 101.)

10

*B.*     *Application*

The jury's finding on the  drive-by special circumstance in defendant's record of conviction establishes as a matter of law that the jury found defendant was either the actual killer or an aider and abettor of murder.  If he was the former, the instructions given required the jury to find he had the intent to kill.  If he were the latter and merely an aider and abettor, that same instruction required the jury to find he acted to aid and abet the murder with the intent to kill.  Either way, the jury's findings mean he is ineligible for resentencing under section 1172.6 as a matter of law.

*i.*     *Jury Findings*

Relying on *In re Lopez* (2023) 14 Cal.5th 562, defendant argues the trial court's reliance on the jury's finding on the drive-by special-circumstance allegation involved a factual finding prohibited at the prima facie stage.  We disagree.

First, our Supreme Court has held jury findings are a part of the record of conviction which the trial court can and should use in determining whether defendant has made a prima facie case for resentencing.  (*Strong*, *supra*, 13 Cal.5th at p. 710.)  Relying on these findings is not engaging in improper factfinding.

We are not persuaded that *Lopez* changes this analysis.  In *Lopez,* defendant did not appeal an order denying a petition filed under section 1172.6.  (*In re Lopez*, *supra*, 14 Cal.5th at p. 567.)  Rather, defendant filed a petition for habeas corpus to challenge his first degree premeditated murder conviction because the jury found him guilty after it was instructed under the now-invalid natural and probable consequences doctrine.  (*Ibid.*)  The appellate court concluded the error was harmless beyond a reasonable doubt because the jury also found the gang murder special circumstance true which contained the jury's finding the defendant had the intent to kill when he acted and "the 'overwhelming' evidence against Lopez more generally."  (*Ibid.*)  Our Supreme Court reversed and concluded the gang murder special circumstance was not sufficient by itself to show this was harmless error, because, as conceded by the Attorney General, "the special

11

circumstance [finding] does not itself establish the elements of first degree premeditated murder under either a direct perpetrator or an aiding and abetting theory." (*Id.* at p. 586.) Thus, this special verdict did not in and of itself show the error was harmless because it could not be used to show the jury made the necessary findings on all of the elements required for conviction of a first degree premeditated murder. (*Id.* at pp. 568, 586-587.)

The analysis in the *Lopez* case is not helpful here. The trial court did not instruct this jury on a theory of murder based on the natural and probable consequences doctrine. Moreover, the jury necessarily found defendant was the person who actually killed the victims, or was a person who directly aided and abetted the murders with the intent to kill. These jury findings satisfy all the elements necessary to establish defendant remains guilty of murder under currently valid theories of murder. (*People v. Harden*, *supra*, 81 Cal.App.5th 45, 52-53 [defendant ineligible for resentencing under § 1172.6 for killing with malice]; *People v. McCoy* (2001) 25 Cal.4th 1111, 1118 [for direct aider and abettor liability for murder, the aider and abettor must know and share the murderous intent of the actual perpetrator].)

### ii.    Straight Murder Liability

We conclude there is no merit in defendant's argument the jury could have found him guilty of murder without regard to his intent to kill based on the general aiding and abetting instructions.

As a preliminary matter, we note that the trial court generally instructed the jury it could find defendant guilty of first degree murder only if it found that defendant acted with the intent to kill, whether he was the actual murderer or acted as an aider and abettor to the crime of murder. (See CALJIC Nos. 8.10, 8.11, 8.20, 8.25.1, 8.27.) Based on these instructions, including the instruction on first degree murder as an aider and abettor, the trial court charged the jury with finding whether defendant had an intent to kill when he engaged in the acts that constituted the murders here. (CALJIC Nos. 8.10, 8.25.1, and 8.27.) When the jury found defendant guilty of first degree murder, it necessarily found

12

defendant acted with malice aforethought that was not imputed to him based solely on his participation in a crime. Defendant's conviction under this theory was unaffected by the changes to section 188 made by Senate Bill No. 1437, and he is not eligible for resentencing. (See *People v. Lopez* (2022) 78 Cal.App.5th 1, 14 ["A petitioner is ineligible for resentencing as a matter of law if the record of conviction conclusively establishes, with no factfinding, weighing of evidence, or credibility determinations, that . . . the petitioner acted with malice aforethought that was not imputed based solely on participation in a crime"]; § 188, subd. (a)(3).)

Defendant cites *People v. Langi* (2022) 73 Cal.App.5th 972, 981-984 (*Langi*) for the proposition that CALJIC No. 3.01 permitted the jury to find him guilty of first degree murder as an aider and abettor based on imputed malice, rather than his own mental state.

Defendant's reliance on *Langi* is misplaced. The defendant in *Langi* was one of four people who physically assaulted a victim during a robbery. (*Langi*, *supra*, 73 Cal.App.5th at p. 976.) The victim died after falling during the attack and hitting his head. (*Ibid.*) The prosecutor urged the jury to find defendant guilty of first degree felony murder but the jury convicted the defendant of second degree murder. (*Id.* at pp. 977.) The trial court denied the defendant's petition for resentencing under section 1172.6 at the prima facie stage. (*Langi*, at p. 977.) The appellate court reversed, finding the jury could have convicted the defendant as an aider and abettor and that CALJIC No. 3.01 did not adequately explain that to be convicted of aiding and abetting second degree murder, the defendant had to "have acted with the mental state of implied malice." (*Langi*, at p. 983.) The appellate court concluded this deficiency in CALJIC No. 3.01 allowed for the possibility the jury found the defendant guilty of aiding and abetting second degree murder by imputing to him the implied malice of the actual killer, even in the absence of an instruction on the natural and probable consequences doctrine. (*Langi*, at p. 984.)

Unlike *Langi*, here the record of conviction establishes the jury found defendant personally acted with an intent to kill when it found the drive-by special circumstance

13

true. Under the general special-circumstance instruction, CALJIC No. 8.80.1, the trial court instructed the jury it could find the special-circumstance allegation true only if defendant was the actual killer, or if he was a direct aider and abettor. If defendant was the actual killer, the drive-by special-circumstance instruction required the jury to find "at the time he discharged the firearm, [he] specifically intended to inflict death." (CALJIC No. 8.81.21.) If the jury found he was merely an aider and abettor of the murders, the general special-circumstance jury instruction required the jury to find "defendant with the intent to kill aided, abetted, counseled, commanded, induced, solicited, requested, or assisted any actor in the commission of the murder in the first degree." (CALJIC No. 8.80.1.) Either way, the jury's true finding on the drive-by special-circumstance allegation necessarily demonstrates the jury found defendant guilty based upon his own mental state of the intent to kill, not one that was imputed to him solely by his participation in the murders.

### iii. Felony Murder

If, instead, we were to examine this case under defendant's hypothetical assertion he was prosecuted under a felony-murder theory despite the fact the trial court did not instruct the jury on that theory, the answer remains unchanged. Under the changes brought about by Senate Bill No. 1437, a person who engages in felony murder is eligible to be resentenced *unless* the person is either (a) the actual killer; (b) an aider and abettor who acted with an intent to kill; or (c) not a major participant in the underlying felony who acted with reckless indifference to human life. (§ 189, subd. (e); *People v. Lopez*, *supra*, 78 Cal.App.5th at p. 14 [noting these findings render a petitioner ineligible for resentencing].)

Here, as noted *ante,* the jury's finding on the drive-by special circumstance conclusively demonstrated defendant was either the actual killer who shot and killed the two victims from the car or an aider and abettor to that action who acted with his own

14

intent to kill. Under either finding, he could still be convicted of murder despite the changes to section 189 brought about by Senate Bill No. 1437.[5]

### III. DISPOSITION

The judgment is affirmed.

/s/
Wiseman, J.[*]

We concur:

/s/
Robie, Acting P. J.

/s/
Krause, J.

---

[5] Given our conclusion here, we decline to address defendant's arguments the trial court erred in determining the jury's verdict demonstrated Martin was not the shooter, and therefore defendant must have been the actual shooter, and the parties' arguments about whether defendant was allowed to file this successive petition under the doctrines of collateral estoppel and law of the case.

[*] Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.