Filed 1/5/24  P. v. Broadbent CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C098028 |
| Plaintiff and Respondent, | (Super. Ct. No. 06F00542) |
| v. | |
| JAMUAL BROADBENT, | |
| Defendant and Appellant. | |

In 2007, a jury found defendant Jamual Broadbent guilty of three counts of attempted murder and found true several firearm enhancements and a gang enhancement. The trial court sentenced him to a determinate sentence of 35 years, plus two consecutive indeterminate 25 years to life sentences.

1

In 2022, defendant filed a petition for resentencing pursuant to Penal Code section 1172.6,[1][2] which the trial court denied at the prima facie stage. On appeal, counsel filed a brief raising no arguable issues under *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *People v. Delgadillo* (2022) 14 Cal.5th 216 (*Delgadillo*) and requesting we exercise our discretion to review the entire record for arguable issues on appeal. Defendant filed a supplemental brief arguing he made a prima facie showing he had been convicted as an aider and abettor under the natural and probable consequences doctrine. He also argues the trial court should reexamine the conduct of his trial under Assembly Bill Nos. 333 (Stats. 2021, ch. 699) and 256 (Stats. 2022, ch. 739), and his sentence under Senate Bill Nos. 81 (Stats. 2021, ch. 721), 620 (Stats. 2017, ch. 682), 567 (Stats. 2021, ch. 731), 1393 (Stats. 2018, ch. 1013) and Assembly Bill No. 333 (Stats. 2021, ch. 699). The first issue is the only issue cognizable on this appeal, and we affirm.

## I. BACKGROUND

The following background is taken from our prior unpublished opinion in defendant's direct appeal, *People v. Diaz* (Oct. 20, 2009, C057586) (*Diaz*).[3]

---

[1] Undesignated statutory references are to the Penal Code.

[2] Effective June 30, 2022, the Legislature renumbered former section 1170.95 to section 1172.6. (Stats. 2022, ch. 58, § 10.) There were no substantive changes to the statute. Defendant filed his petition under former section 1170.95, but we will cite to the current section 1172.6.

[3] We do not use these facts in our analysis but present them to give context to our discussion. We acknowledge the split of authority on whether these facts may be used at the prima facie stage, but do not resolve that issue given our disposition of this case. (Compare *People v. Brimmer* (2014) 230 Cal.App.4th 782, 800 [holding a prior appellate opinion is part of the record of conviction that may be used at the prima facie stage] with *People v. Flores* (2022) 76 Cal.App.5th 974, 988 [suggesting in dicta that opinion may not be used at the prima facie stage].)

2

In January 2006, D.H and his friend M.J. were walking down a street in Sacramento. D.H. saw four men (including a man named Diaz) standing on a street corner. (*Diaz, supra*, C057586.)

Diaz asked D.H and M.J. a question to the effect of, "what gang do you belong to?" (*Diaz, supra*, C057586.)

M.J. responded, "I'm from L.A. but I don't gang bang." (*Diaz, supra*, C057586.)

Diaz told D.H and M.J. to leave and that all of Oak Park was his territory. D.H. said they were leaving to which Diaz responded, "Shut up, bitch or I'll slap you." (*Diaz, supra*, C057586.)

D.H. called his brother T.H. to come get him because he did not want to walk home. D.H. told T.H. about the run-in with the four men. (*Diaz, supra*, C057586.)

T.H. and four of his friends picked up D.H (the D.H. group). M.J. had already left. (*Diaz, supra*, C057586.)

About 15 minutes after D.H.'s initial encounter with the men, the D.H. group returned to the scene. The men were all still there. The D.H group got out of their car, and Diaz came out into the middle of the street. Things started out rocky but settled down for a moment. But then members of the D.H. group heard Diaz tell someone, "go get a gun." Diaz said D.H. was not supposed to be there. (*Diaz, supra*, C057586.)

At that time, another member of the D.H. group recognized Diaz and volunteered that he knew him. Diaz responded that he knew that man too, they shook hands, and Diaz said, "[E]verything cool." (*Diaz, supra*, C057586.) But it was not.

Next, D.H. saw two men returning. A member of the D.H. group told the others that the returning men had a weapon and they should leave. (*Diaz, supra*, C057586.)

Defendant and another man walked toward the D.H. group's car. The members of the D.H. group retreated to their car. Before he got into the car, one of them looked at defendant and told him everything was cool, they were leaving, and got into the car. As a second man was getting into the car, defendant started shooting. The bullets hit one of

3

the men in the D.H. group in the head, leaving him in a vegetative state. Bullets struck two others in the D.H. group. (*Diaz, supra*, C057586.)

The information charged Diaz and defendant with three counts of attempted murder. (§ 664/187, subd. (a).) The complaint included various enhancement allegations, including criminal street gang enhancements on each charge. (§ 186.22.) As relevant to this case, for each attempted murder, the information charged defendant as the person who personally and intentionally discharged a handgun, which proximately caused great bodily injury or death. (§ 12022.53, subd. (d).) As to his accomplice Diaz, the information only alleged a principal personally and intentionally discharged a handgun which proximately caused great bodily injury or death. (§ 12022.53, subd. (d).)

After the presentation of evidence, the trial court instructed the jury on attempted murder using CALCRIM No. 600 that the People had to prove defendant took at least one direct but ineffective step towards killing another person and intended to kill that person. The trial court further instructed the jury on the concept of direct aiding and abetting of a crime that the People had to prove "(1) The perpetrator committed the crime; [¶] (2) The defendant knew that the perpetrator intended to commit the crime; [¶] (3) Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime; [¶] AND [¶] (4) The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime." (CALCRIM No. 401.)

The trial court also instructed the jury on the concept of aider and abettor liability under a theory of natural and probable consequences. (CALCRIM No. 403.) In that instruction, the trial court told the jury that the People had to prove "(1) The defendant is guilty of brandishing a firearm or assault with a firearm; [¶] (2) During the commission of the brandishing a firearm or assault with a firearm the crime of attempted murder was committed; [¶] AND [¶] (3) Under all of the circumstances, a reasonable person in the defendant's position would have known that the commission of the attempted murder was

4

a natural and probable consequence of the commission of the brandishing a firearm or assault with a firearm."

During closing argument, the prosecutor argued defendant was the one who fired the gun and directly and actively committed the acts that gave rise to his guilt for attempted murder. The prosecutor argued Diaz was also liable for attempted murder as an aider and abettor. The focus of defendant's closing argument was on self-defense and imperfect self-defense, not the question of whether he was an aider and abettor or the direct perpetrator of the attempted murder.

During its deliberations, the jury asked the trial court, "Does aiding and abetting a crime mean setting any crime into motion or does it mean aiding and abetting attempted murder? How 'linked' are the aiding and abetting charge to the attempted murder." The trial court responded, "Mr. Diaz is charged with attempted murder as an aider and abettor under either of two theories: see Principals, CALCRIM 400, CALCRIM 401, CALCRIM 403, CALCRIM 875 AND CALCRIM 983 [the jury instructions on liability as a direct aider and abettor and an aider and abettor under the natural and probable consequences doctrine]."

The jury also asked the trial court, "Can Diaz be convicted of a lesser crime than [defendant] may have been found guilty of?" The court responded, "Yes, defendant Diaz can be convicted of a lesser crime than [defendant] may have been found guilty of."

The jury next asked the trial court, "Is CALCRIM No. 403 [which describes the natural and probable consequences liability for aiding and abetting the brandishing a firearm or assault with a firearm as noted *ante*] alone enough to convict aiding and abetting attempted murder?" The trial court responded, "If you find [Diaz] aided and abetted the attempted murder th[en] use CALCRIM No. 401 only [direct aiding and abetting instruction]. If you find [Diaz] aided and abetted either the crime of brandishing a firearm or the crime of assault with a firearm[,] first you must find he aided and abetted those crimes (i.e. brandishing a firearm or assault with a firearm) using CALCRIM

5

No. 401. Then pursuant to CALCRIM No. 403 you must determine whether attempted murder was a natural and probable consequence of either brandishing a firearm or assault with a firearm."

The jury found defendant guilty of three counts of attempted murder (§§ 664/187, subd. (a)) and found true that defendant "personally used, and intentionally and personally discharged a firearm . . . , which proximately caused great bodily injury" to each victim (§ 12022.53, subd. (d)). The jury also found true that defendant personally used a firearm, and intentionally and personally discharged a firearm. (§§ 12022.5, subd. (a), 12022.53, subds. (b), (c) & (e)(1).)

The jury found his codefendant Diaz guilty of three counts of attempted murder (§§ 664/187, subd. (a)) and found true that Diaz "was a principal and that a principal personally and intentionally discharged a firearm . . . , which proximately caused great bodily injury" to each victim (§ 12022.53, subd. (d)).

A different panel of this court affirmed defendant's conviction in 2009 and the clerk of this court issued the remittitur on February 22, 2010.[4] (*Diaz, supra*, C057586.)

In 2022, defendant filed a form petition for resentencing under section 1172.6. Defendant checked the boxes stating a charging document was filed against him that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine, or other theory under which malice was imputed to him based solely on his participation in a crime; he was convicted of murder, attempted murder, or manslaughter; and he could not now be convicted of murder because of the changes made to sections 188 and 189, effective January 1, 2019.

---

[4]    We take judicial notice of our records in case No. C057586. (Evid. Code, § 452, subd. (d).)

Defendant also filed a one-page written document stating, "I received multiple enhancement[s] (Gun an[d] gang) which seem to be illegal sentence under [sections] 1170, 333, and [Senate Bill Nos. 567 and 620]."

The trial court held a hearing on the petition and denied it. The trial court found defendant was not entitled to relief because "the record of conviction leaves no doubt the jury convicted [defendant] as the direct perpetrator." The information charged defendant as the only participant who personally and intentionally discharged the firearm causing great bodily injury, and the jury found these allegations to be true. By contrast, as to Diaz, the information only charged a principal engaged in those actions with the firearm. In addition, during closing argument the prosecutor identified only defendant as the shooter and argued Diaz was only liable as an aider and abettor. And, in response to the jury's questions on aiding and abetting theories, the trial court told the jury those instructions were only applicable to Diaz. In addition, the trial court noted our prior opinion indicated defendant was the only shooter.

Defendant filed a timely notice of appeal.

## II. DISCUSSION

In his supplemental brief, defendant argues he made a prima facie showing he was convicted of attempted murder under the natural and probable consequences doctrine. Separately, defendant argues several newly enacted statutes should be applied to his case. We disagree.

A.    *Scope of Appeal*

In *Wende*, our Supreme Court held that "Courts of Appeal must conduct a review of the entire record whenever appointed counsel submits a brief on direct appeal which raises no specific issues or describes the appeal as frivolous." (*Delgadillo, supra*, 14 Cal.5th at p. 221.) The *Wende* procedure applies "to the first appeal as of right and is compelled by the constitutional right to counsel under the Fourteenth Amendment of the United States Constitution." (*Ibid*.)

7

In *Delgadillo*, our Supreme Court held that *Wende* independent review is not constitutionally required in an appeal from a postconviction order denying a section 1172.6 petition for resentencing because the denial does not implicate a defendant's constitutional right to counsel in a first appeal as of right. (*Delgadillo, supra*, 14 Cal.5th at pp. 222, 224-225.)

The *Delgadillo* court prescribed guidance for considering an appeal from an order denying a section 1172.6 petition where counsel finds no arguable issues to be pursued on appeal. (*Delgadillo, supra*, 14 Cal.5th at p. 232.) When a defendant has been notified that his appeal of the postconviction order may be dismissed, the reviewing court must evaluate the specific arguments presented in any supplemental brief the defendant files. (*Ibid.*) The filing of a supplemental brief, however, "does not compel an independent review of the entire record to identify unraised issues." (*Ibid.*)

We turn to the issues raised in defendant's supplemental brief.

B.     *Senate Bill No. 1437*

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill No. 1437) was enacted "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) Senate Bill No. 1437 achieved this by amending sections 188 and 189. Effective January 1, 2022, Senate Bill No. 775 (2021-2022 Reg. Sess.) (Senate Bill No. 775) amended section 1172.6 to expand its coverage to include those convicted of "attempted murder under the natural and probable consequences doctrine . . . ." (Stats. 2021, ch. 551, § 2; § 1172.6, subd. (a).)

Senate Bill No. 1437 created a mechanism for persons convicted of qualifying offenses to petition for resentencing. (§ 1172.6, subd. (a).) Upon receipt of the petition, the trial court must determine whether the petition is facially sufficient under section

8

1172.6, subdivision (b). (See *People v. Lewis* (2021) 11 Cal.5th 952, 960 (*Lewis*).) "If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition." (*People v. Strong* (2022) 13 Cal.5th 698, 708.)

As it relates to the crime of attempted murder, section 1172.6 was amended by the Legislature in 2021 by Senate Bill No. 775. (Stats. 2021, ch. 551.) Specifically, Senate Bill No. 775 amended section 1172.6, subdivision (a) to state: "A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, *attempted murder under the natural and probable consequences doctrine*, or manslaughter may file a petition with the court that sentenced the petitioner to have petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts." (Italics added.) Section 1172.6 "applies by its terms *only to attempted murders based on the natural and probable consequences doctrine*." (*People v. Coley* (2022) 77 Cal.App.5th 539, 548, italics added.)

The inquiry at the prima facie stage under section 1172.6, subdivision (c) is "limited." (*Lewis, supra*, 11 Cal.5th at p. 971.) "Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved." ' " (*Ibid*.) " 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Ibid*.) To determine whether the petitioner has made the requisite prima facie showing, the trial court may examine the petitioner's record of conviction. (*Id.* at pp. 970-971.)

"Appellate opinions . . . are generally considered to be part of the record of conviction. [Citation.] However, . . . the probative value of an appellate opinion is case

9

specific, and 'it is certainly correct that an appellate opinion might not supply all answers.' " (*Lewis, supra*, 11 Cal.5th at p. 972.)

If the record of conviction establishes the petition lacks merit as a matter of law, the trial court may deny the petition without conducting further proceedings.[5] (*Lewis, supra*, 11 Cal.5th at p. 971 [the "record of conviction will necessarily inform the trial court's prima facie inquiry . . . , allowing the court to distinguish petitions with potential merit from those that are clearly meritless"].)

We review de novo a trial court's denial of a section 1172.6 petition at the prima facie stage. (*People v. Ervin* (2021) 72 Cal.App.5th 90, 101.)

Here, defendant is ineligible under section 1172.6 as a matter of law because the record of conviction establishes he was convicted as a direct perpetrator of attempted murder, not as an aider and abettor under the natural and probable consequences doctrine. The record conclusively establishes he is the person who attempted to murder his victims by firing a gun at them in their car.

As found by the trial court, the firearm enhancements alleged against defendant were different than those alleged against Diaz. This reflected the prosecution's theory that "defendant personally and intentionally discharged a firearm . . . , which proximately caused great bodily injury" to each of the three people he and Diaz attempted to murder. At the same time, as to Diaz, the charging document merely alleged a principal committed that action.

During closing argument, the prosecutor confirmed this theory by arguing defendant was liable for attempted murder as the person who fired the gun into the car, while Diaz was liable as an aider and abettor.

---

[5]    The decision in *People v. Curiel* (2023) 15 Cal.5th 433 does not alter our decision here.

The jury's understanding of this is further reflected in the jury's questions and the trial court's responses. In response to the jury's questions, the trial court consistently and specifically instructed the jury on aiding and abetting only as to Diaz, and not as to defendant. The jury's questions demonstrated they understood the limited applicability of the natural and probable consequence instruction to Diaz.

Most importantly, the jury findings on the section 12022.53, subdivision (d) allegation demonstrate the jury found defendant was guilty as the actual perpetrator, while Diaz was found guilty as an aider and abettor. As to defendant, the jury found defendant "intentionally and personally discharged a firearm . . . , which proximately caused great bodily injury to" each of the three people he and Diaz attempted to murder, demonstrating the jury found defendant was the one with the gun who attempted to kill the victims by shooting them. As to Diaz, the jury found a principal committed that act.

We conclude the record of conviction demonstrates defendant was not convicted as an aider and abettor under the natural and probable consequences doctrine as a matter of law, but rather as the direct perpetrator who fired the gun that struck all three victims. As such, he is ineligible for resentencing.

## C. *Other Statutes*

In his supplemental brief, defendant lists six statutes enacted since he was convicted that he asserts should be applied to his case:

   i.   Senate Bill No. 1393: His priors under section 667.5 should be stricken.

   ii.   Assembly Bill No. 333: The gang enhancement should not have been presented to the jury under section 186.22.

   iii.   Assembly Bill No. 256: His sentence violated the California Racial Justice Act of 2020 under section 745.

   iv.   Senate Bill No. 81: He could only be sentenced for one enhancement under section 1385.

11

v. Senate Bill No. 620: The trial court had discretion to strike the gun enhancements under section 12022.53.

vi. Senate Bill No. 567: The court should have sentenced him to the low term as a youthful offender under section 1170, subdivision (d).

We conclude these statutes cannot be applied to the current appeal.

First, the trial court did not sentence defendant under section 667.5. Thus, Senate Bill No. 1393 has no application here.

Second, to the extent defendant raises challenges to his trial unrelated to the changes brought about by Senate Bill No. 1437, section 1172.6 does not authorize those challenges. (*People v. DeHuff* (2021) 63 Cal.App.5th 428, 438 [section 1172.6 "does not permit a petitioner to establish eligibility on the basis of alleged trial error"].) This applies to both his challenge under the California Racial Justice Act of 2020 and his challenge to the gang enhancement imposed under section 186.22.

Third, to the extent he seeks the retroactive application of the other later-enacted statutes to his sentence—Senate Bill No. 81 (Stats. 2021, ch. 721); Senate Bill No. 620 (Stats. 2017, ch. 682); and Senate Bill No. 567 (Stats 2021, ch. 731)—the rule for retroactivity is that the judgment must not be final to apply a retroactive statute to that case. (*People v. Lopez* (2019) 42 Cal.App.5th 337, 341-342 [For "retroactive application of an amendment to a criminal statute, the finality of a judgment is extended until the time has passed for petitioning for a writ of certiorari in the United States Supreme Court"].) Defendant's judgment has been final since 2010 when the time expired for him to bring a petition before the United States Supreme Court, long before any of these changes in the law went into effect. (*Diaz, supra*, C057586.) (Cal. Rules of Court, rule 8.366; U.S. Supreme Ct. Rules, rule 13 [A petition for a writ of certiorari "is timely when it is filed with the Clerk within 90 days after entry of the order denying discretionary review"].) Thus, he is not eligible for the retroactive application of any of these new laws.

12

## III.  DISPOSITION

The judgment is affirmed.


/s/
Keithley, J.*


We concur:


/s/
Hull, Acting P. J.


/s/
Renner, J.


---

* Judge of the Butte County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.